UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MELVIN PIPKINS JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  1:20 CV 161 CDP |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Melvin Pipkins Jr. brings this action under 42 U.S.C. §§ 405 and

1383 seeking judicial review of the Commissioner's final decision denying his

claims for disability insurance benefits (DIB) under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under

Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  For the reasons that follow, I must

reverse and remand the matter to the Commissioner for further consideration.

### Procedural History

On November 13, 2017, the Social Security Administration denied Pipkins'

August 2017 applications for DIB and SSI in which he claimed he became disabled

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

on January 21, 2014, because of issues involving his back, neck, right knee, and kidneys; acid reflux; high blood pressure; anxiety and depression; short term memory loss; and poor concentration.[2]  Pipkins later amended his alleged onset date to March 12, 2016.  A hearing was held before an ALJ on May 20, 2019, at which Pipkins and a vocational expert (VE) testified.  On July 19, 2019, the ALJ denied Pipkins' claims for benefits, finding that VE testimony supported a conclusion that Pipkins could perform work that exists in significant numbers in the national economy.  On May 26, 2020, the Appeals Council denied Pipkins' request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, Pipkins claims that the ALJ's determination to discount Pipkins' subjective statements of symptoms and medical opinion evidence that supported a finding of disability is not supported by substantial evidence on the record as a whole.  Pipkins also contends that the ALJ legally erred in failing to follow the Regulations' requirements in evaluating medical opinion evidence.  Because the ALJ committed legal error as Pipkins contends and the ALJ's determination to discount Pipkins' subjective statements is

---

[2] Pipkins filed applications for DIB and SSI in March 2014, which were denied by an administrative law judge (ALJ) on March 11, 2016.  (Tr. 62-75.)  The Appeals Council denied Pipkins' request to review that decision.  (Tr. 81-86.)  In the current action, Pipkins does not seek to reopen those applications.

not supported by the record, I must remand the matter to the Commissioner for further proceedings.

## Medical Records and Other Evidence Before the ALJ

Pipkins is a man in his early forties who has worked several years as a construction laborer.  He has experienced long-term radiating back and neck pain for which he takes narcotic and other medications and is managed by a pain specialist.  Diagnostic tests show mild to severe degenerative disc disease of the cervical, thoracic, and lumbar-sacral spine; and physical examinations by his treating physicians show spasms, mild to severe tenderness along the spine, and constant pain.  Injection therapy failed, and Pipkins was cautioned against steroid injections on account of contraindicating stomach issues.  He underwent cervical diskectomy and fusion surgery in July 2018 from which he obtained limited relief. He later met the guidelines for lumbar fusion surgery but was advised that the risk of resulting adjacent level disease was very high.  Although told that there was a low probability of successful relief of his symptoms, Pipkins decided to undergo the surgery.  Surgery cannot be scheduled, however, until he quits smoking.

Pipkins also has anxiety and depression for which he takes psychotropic medications, regularly uses cannabis, and undergoes counseling.  Pipkins associates his mental impairments with workplace harassment he received several years ago from coworkers and supervisors relating to a previous criminal

conviction.  He feels that he is constantly being judged and therefore avoids public interaction.  Pipkins' mental impairments worsened after a June 2018 workplace accident whereupon his right index finger was amputated after being caught in industrial machinery.  Pipkins experiences flashbacks and nightmares relating to the accident.  His therapist describes him as irritable, agitated, and self-isolating.

From December 2017 to June 2018, Pipkins worked at an earnings level equivalent to substantial gainful activity (SGA).  Accordingly, the ALJ considered Pipkins' claim of disability for only those periods during which he did not engage in SGA, that is, March 2016 to December 2017 and June 2018 to July 2019. Pipkins also worked part-time beginning September 2018, but he testified that his employer – who is his friend – provided workplace accommodations for him, including expecting him to work only a few days a month and permitting him to recline in his truck during the workday when needed.  (Tr. 35-36, 43, 48.)

With respect to other medical records and evidence of record, I adopt Pipkins' recitation of facts set forth in his Statement of Material Facts (ECF 17-1) as admitted by the Commissioner (ECF 22-1), as well as the Commissioner's Additional Facts (*id.*) as admitted by Pipkins (ECF 23-1).  These Statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

**Discussion**

A.    Legal Standard

To be eligible for DIB and SSI under the Social Security Act, Pipkins must

prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.

2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir.

1992).  The Social Security Act defines disability as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled

"only if his physical or mental impairment or impairments are of such severity that

he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine

whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a

determination as to whether the claimant is currently engaged in substantial gainful

activity; whether he has a severe impairment; and whether his severe

impairment(s) meets or medically equals the severity of a listed impairment.  At

Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

I must affirm the Commissioner's decision if it not based on legal error and if there is substantial evidence on the record as a whole to support the conclusion.  *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

B.    The ALJ's Decision

The ALJ found that Pipkins met the insured status requirements of the Social Security Act through December 31, 2020.  The ALJ determined that Pipkins' earnings from December 2017 through June 2018 met the definition of SGA

during that period; accordingly, he considered Pipkins' claim of disability for only

those periods Pipkins did not engage in SGA.  The ALJ found that Pipkins had the

following severe impairments:  degenerative disc disease, depression, anxiety,

substance addiction disorder, asthma/chronic obstructive pulmonary disease, and

right index amputation, but that they did not meet or medically equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12-13.)

> The ALJ found that Pipkins had the RFC to perform sedentary work,
>
> except he can occasionally climb, balance, stoop, kneel, crouch, and
> crawl.  He can have no more than occasional exposure to extreme
> cold, unprotected heights, dangerous or moving machinery, and
> vibrations.  He retains the ability to understand, remember and carry
> out simple and detailed tasks and instructions.  He can concentrate,
> attend, and persist on those simple and detailed tasks and instructions.
> He can interact occasionally with supervisors, coworkers, and the
> general public.  He can respond appropriately to routine workplace
> changes.

(Tr. 15.)  The ALJ determined that Pipkins could not perform his past

relevant work as a construction laborer, welder, overhead crane operator, or

shipping and receiving worker.  Considering Pipkins' RFC, age, limited

education, and work experience, the ALJ found VE testimony to support a

conclusion that Pipkins could perform other work as it exists in significant

numbers in the national economy, and specifically, as a machine tender,

circuit board touch up worker, and optical good assembler.  The ALJ thus

found that Pipkins was not under a disability from March 12, 2016, through

the date of the decision.  (Tr. 19-20.)

C.     Legal Error – Consideration of Medical Opinion Evidence

Pipkins filed his applications for benefits after March 2017.  Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c, 416.920c.  Under these Regulations, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per

curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding

where ALJ discredited physician's opinion without discussing factors

contemplated in Regulation, as failure to comply with opinion-evaluation

Regulation was legal error)).  *See also Starman v. Kijakazi*, No. 2:20-CV-00035-

SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021).  ALJs need not explain

in their decision how they considered the other factors.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).

Here, the case record contains a medical opinion rendered November 13,

2017, by Raphael Smith, Psy.D., a psychological consultant with disability

determinations.  Based on his review of the record at that time, Dr. Smith reported

that Pipkins had the medically determinable impairments of depressive, bipolar,

and related disorders; and anxiety and obsessive-compulsive disorders.  (Tr. 93.)

He opined that these impairments caused Pipkins to be moderately limited in the

domains of understanding, remembering, or applying information; interacting with

others; and concentration, persistence, or pace.  He further opined that the

impairments caused mild limitations in Pipkins' ability to adapt or manage himself.

(*Id.*)  Dr. Smith opined that Pipkins' ability to understand, remember, and carry out

very short and simple instructions was not significantly limited but that his ability

to understand, remember, and carry out detailed instructions was moderately

limited.  He opined that Pipkins was not significantly limited in his ability to

maintain attention and concentration for extended periods.  (Tr. 98-99.)  Dr. Smith

also opined that Pipkins was moderately limited in his ability to work in

coordination with or in proximity to others without being distracted by them, as

well as in his ability to accept instructions and respond appropriately to criticism

from supervisors.  He found Pipkins not significantly limited in his abilities to

interact appropriately with the general public and to get along with coworkers or

peers without distracting them.  (Tr. 99.)  In his narrative explanations of Pipkins'

limitations, Dr. Smith stated:

> [H]e would be able to retain information and effectively carry out
> tasks of simple and moderate complexity. . . . [H]e could apply
> adequate levels of concentration and persistence to complete simple
> work tasks. . . . [*Claimant*] *will likely have difficulty accepting*
> *criticism from his supervisors* but could interact appropriately with the
> public and coworkers. . . . [Claimant] would be capable of completing
> simple, repetitive tasks for a 40 hour work week with limited contact
> with the general public.

(Tr. 98-99.)  (Emphasis added.)

In his written decision, the ALJ briefly addressed Dr. Smith's opinion:  "The

opinion of psychologist Raphael Smith, Psy.D., is consistent with the medical

evidence.  However, the evidence received at the hearing level supports that the

claimant is capable of accepting supervision."  (Tr. 18.)  That is the extent of the

ALJ's discussion of Dr. Smith's opinion.  Because the ALJ's cursory statement

neither articulates the persuasiveness of Dr. Smith's opinion nor explains the

supportability or consistency factors in evaluating the opinion, it runs afoul of the

Regulations.

In *Bonnett*, the ALJ addressed the supportability of a doctor's medical opinion without discussing whether it was consistent with the other evidence of record.  The Eighth Circuit reversed the district court's affirmance of the ALJ's decision, citing the ALJ's failure to address the consistency factor as required by the Regulations.  859 Fed. Appx. at 20.  Although the Commissioner argued in *Bonnett* that the doctor's opinion was indeed not consistent with specific evidence of record, the Eighth Circuit rejected the argument because the ALJ "made no such findings" in his decision.  *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).  We have a similar circumstance here.

The ALJ here did not articulate in his decision how persuasive he found Dr. Smith's opinion.  This alone runs afoul of the Regulations.  *See* 20 C.F.R. §§ 404.l520c(b), 416.920c(b).  Moreover, the ALJ did not explain how he considered either the supportability or consistency factor in determining the persuasiveness of Dr. Smith's opinion.  His sprinkling of the words "supports" and "consistent" in his cursory treatment of the opinion is insufficient to satisfy the Regulations' requirement that the ALJ "explain" how he considered these factors in determining the persuasiveness of a medical opinion.  *See Guess v. Kijakazi*, No. 4:20-CV-887-JTR, 2021 WL 5983193, at *3-4 (E.D. Ark. Dec. 17, 2021).

The Commissioner argues that when read in its entirety, the ALJ's decision

necessarily included an evaluation of the consistency of Dr. Smith's opinion given that the ALJ's general summary of the record supports his RFC finding that Pipkins could occasionally interact with supervisors.  The Regulations, however, direct the ALJ to specifically address and "explain" the supportability and consistency of the medical opinion itself.[3]  Whether the evidence of record *in toto* supports the RFC determination is a separate consideration, and the ALJ's failure to properly evaluate medical evidence of record renders this consideration in doubt.  *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).  Regardless, I cannot affirm the ALJ's treatment of Dr. Smith's medical opinion based on the Commissioner's assertion of other evidence in the record when the ALJ made no such findings himself.  *Bonnett*, 859 Fed. Appx. at 20.  No matter the adequacy of the ALJ's general summary of the evidence of record, he ignored the Regulations' mandates to "articulate" the persuasiveness of Dr. Smith's opinion and "explain" the supportability and consistency of Dr. Smith's opinion in view of such evidence. And because the VE testified at the hearing that a person unable to accept criticism from a supervisor would be unemployable (*see* Tr. 56), the ALJ's failure to

---

[3] "*Supportability*.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "*Consistency*.  The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

properly evaluate Dr. Smith's opinion that contained this limitation was not harmless.  I must therefore remand the matter to the Commissioner for proper consideration of the medical opinion evidence of record.  *Bonnett*, 859 Fed. Appx. at 20.

Because the ALJ failed to properly consider and explain the supportability and consistency of Dr. Smith's medical opinion as required by the Regulations, I cannot determine on this record whether the ALJ's rejection of Dr. Smith's finding regarding Pipkins' ability to be supervised is based on substantial evidence on the record as a whole.  *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1985).  It is not within the province of this Court to speculate as to why the ALJ may have rejected certain evidence.  *Id.*

D.    Consistency of Pipkins Subjective Statements of Symptoms[4]

A claimant's RFC is the most he can do despite his physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the

---

[4] In 2017, the Social Security Administration issued a new ruling that eliminated the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. §§ 404.1529, 416.929.  This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history

omitted).  *See also* 20 C.F.R. §§ 404.1529, 416.929.  If the ALJ finds that the

statements are inconsistent with the evidence of record, he must make an express

determination and detail specific reasons for the weight given the claimant's

testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d

1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

While an ALJ must acknowledge and consider the *Polaski* factors, he need not

discuss each one before discounting a claimant's subjective statements.  *Wildman*,

596 F.3d at 968.

　　Here, after finding at Step 3 of the sequential analysis that Pipkins'

impairments did not meet the criteria for listing-level disability, the ALJ

summarized the record and pointed to inconsistences that detracted from Pipkins'

statements of disabling symptoms.  The ALJ's rationale, however, was partially

flawed.  Several of the alleged inconsistencies relied on by the ALJ are not

supported by, and indeed are contrary to, the record.  These discrepancies

undermine the ALJ's ultimate conclusion that Pipkins' symptoms are less severe

than he claims.

　　First, the ALJ described Pipkins' overall course of treatment as

"conservative and minimal," finding that – aside from cervical fusion surgery –

Pipkins' physical impairments were "maintained on medication," and with a

combination of medication and counseling for his mental impairments.  The ALJ

found that Pipkins had responded well to such treatment, thereby rendering his subject statements of limiting symptoms inconsistent with the record.  (Tr. 16.) The record *in toto* does not support the ALJ's findings.

Pipkins received care from a pain specialist for several years and was prescribed significant narcotic pain medication, muscle relaxants, and other medications which were occasionally adjusted because of their ineffectiveness. (*E.g.*, Tr. 420, 542-48, 771-72.)  *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (long history of pain management and drug therapy is objective medical fact evidencing pain).[5]  Although Pipkins sometimes reported that medication helped his pain, he nevertheless consistently rated his pain at levels 7 to 10 on a 10-point scale.  Partial relief of chronic pain obtained only through the use of "very heavy medications" does not indicate that a claimant can work.  *Shelly v. Astrue*, No. 4:11CV1122 CDP, 2012 WL 1414844, at *16 (E.D. Mo. Apr. 24, 2012).  *See also Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002) (no evidence that medication relieved pain to the point that claimant could engage in full time work). The record also shows that Pipkins could not receive steroid injections because of potential contraindications with his gastric ulcers and that nonsteroid injection

---

[5] I am aware that the mere taking of narcotic pain medication does not require an ALJ to credit a claimant's subjective complaint that his pain is disabling. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).  But Pipkins' complaints are substantiated by other evidence, including the diagnosis of chronic pain syndrome (*e.g.*, Tr. 755, 761, 769, 772) and positive provocative tests.

therapy did not provide him relief.  (*See* Tr. 392, 395, 399, 401, 405, 408.)  Pipkins

was also prescribed a back brace to restrict mobility of the trunk.  (*See* Tr. 365-66.)

Finally, at a neurosurgical consult in March 2019, Pipkins' provider noted that he

had "failed all conservative treatment and meets neurosurgical guidelines for L5-

S1 lumbar fusion."  (Tr 701.)  Pipkins was cautioned, however, that he was at very

high risk for adjacent level disease and that surgical intervention carried a low

probability of symptom relief.  Even with these caveats, Pipkins indicated his

desire to undergo the surgery.  (*Id*.)

The long-term use of narcotic pain medication, being medically unable to

undergo steroid injections, meeting criteria for lumbar fusion surgery, and agreeing

to such surgery knowing that there existed little chance of symptom relief is

inconsistent with the ALJ's characterization that Pipkins' pain symptoms were

"maintained on medication" through a course of "conservative and minimal"

treatment.

The ALJ next stated that Pipkins' ability to engage in work activity was

inconsistent with his complaints.  The ALJ failed to address, however, Pipkins'

claim that he engages in such work with accommodations, and specifically that he

is expected to work only once or twice a month and is permitted to recline

throughout the workday as needed.  The ALJ also failed to acknowledge Pipkins'

assertion that his employer is his friend who employs him so that he does not

become homeless.  The record thus shows that Pipkins' part-time employment is only through the good graces of his employer and that the accommodations serve to corroborate his testimony regarding his pain rather than detract from it.  To discredit Pipkins' statements because of his work activity without considering the extent and nature of such activity was error in the circumstances of this case. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

The ALJ also specifically discounted Pipkins' statements regarding the extent of his back and neck pain, finding that imaging of his spine suggested only moderate levels of degeneration; that surgery alleviated some of his pain; that he has reported to his treating physicians that he is doing okay and that his functioning is fair; that findings upon clinical examinations are essentially normal except for only mild to moderate symptoms, including tenderness and spasms about the spine; and that his shoulders and lower extremities are normal upon examination.  To the contrary, repeated diagnostic imaging showed varying levels of disc degeneration of the spine, including severe left C3-4 foraminal stenosis and severe left L5-S1 foraminal stenosis, both of which met the criteria for fusion surgery.  And Pipkins' treating physicians and pain specialists repeatedly made clinical observations during the relevant periods that cannot be characterized as "essentially normal," including findings of bilateral hand weakness, weakness and sensory deficits about the lower extremities, limited range of motion about the

cervical spine with radiating pain to the shoulders, limited range of motion about the lumbar spine with radiating pain to the legs, positive straight leg raising, positive Slump test, and positive facet loads.  I am aware that an ALJ is not required to explain all the evidence in the record, *Wildman*, 596 F.3d at 966, but he nevertheless cannot pick and choose only that evidence buttressing his conclusion. *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019).

Finally, the ALJ stated that Pipkins has been maintained on medications for his mental impairments without change and without reports of ineffectiveness, and that his mental health providers have noted few abnormalities.  But the record indeed shows changes to Pipkins' medications, including the addition of Seroquel in September 2018 to help with sleep, impulse control, and depression; an increase of Cymbalta in October 2018; and the addition of prazosin in February 2019 for nightmares.  Moreover, while the ALJ noted that Pipkins reported to his counselor in March 2019 that he was working part-time (*see* Tr. 18), he makes no mention of the treatment note recorded one month later – in April 2019 – wherein Pipkins' counselor reported that Pipkins "continues to show little improvement in his depression, PTSD and anxiety[;] . . . continues to have numerous flashbacks, difficulty going back to work and continues to have nightmares[; and] has an increase in irritability and loss of pleasurable activities."  (Tr. 709.)  Pipkins' counselor also reported in 2018 and 2019 the Pipkins occasionally had passive

thoughts of suicide, was self-isolating, exhibited anger, and had a short fuse.  (Tr.

709-43.)  *Nelson*, 413 F. Supp. 3d at 916 (ALJ cannot pick and choose only that

evidence supporting conclusion).

While some of the ALJ's findings are not without some support in the record

– that is, that Pipkins' treatment and medications for COPD were effective and that

he had no complaints regarding such; that a one-time consultative examiner

reported in November 2017 that Pipkins showed full strength, full range of motion,

no spasming or tenderness, and no evidence of compressive neuropathy in the

lower extremities[6]; and that Pipkins occasionally exhibited mild tenderness in 2017

and had full range of motion about the neck in October, November, and December

2018 – these few instances of inconsistencies between the record and Pipkins'

statements of symptoms are insufficient to support the ALJ's decision to discount

Pipkins' statements of disabling limitations, especially when viewed against the

backdrop of the several misapprehensions in the ALJ's reading of the record as

well as the consistent observations of his treating medical sources.  *Baumgarten v.*

*Chater*, 75 F.3d 366, 369-70 (8th Cir. 1996).  The matter must be remanded for

reconsideration of Pipkins' statements of symptoms in light of the above-noted

clarifications of the record.  *Id.* at 370.

---

[6] Notably, this examination and these clinical observations were made one month before Pipkins'
six-month period of SGA began.

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED**, and this case is **REMANDED** to the Commissioner for further

consideration consistent with this Memorandum and Order.

A separate Judgment in accordance with this Memorandum and Order is

entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of January, 2022.